**United States District Court**
**For the Northern District of California**

E-FILED on   05/20/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| METTEYYA BRAHMANA,<br><br>    Plaintiff,<br><br>    v.<br><br>PHILLIP CHARLES LEMBO; CYBERDATA CORPORATION; NUMONIX, INC.; AND CONQUEST TECHNOLOGY LIMITED,<br><br>    Defendants. | No. C-09-00106 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; GRANTING MOTION TO QUASH SERVICE AND DISMISS COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS; GRANTING MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE<br><br>**[Re Docket Nos. 17, 20, 38]** |

      Defendants Phillip Charles Lembo ("Lembo") and CyberData Corporation ("Cyberdata"), et al., move to dismiss *pro se* plaintiff Metteyya Brahmana's ("Brahmana") complaint for failure to state a claim. Defendant Conquest Technology Limited ("Conquest") also moves to quash service and dismiss the complaint against it for insufficient service of process. Brahmana opposes both motions. For the reasons stated below, the court grants in part and denies in part the motion to

dismiss for failure to state a claim and grants the motion to quash service and dismiss for insufficient service of process.

**I. BACKGROUND**

Brahmana was employed by Cyberdata from August 1, 2005 until October 24, 2008. First Amended Complaint ¶ 9 ("FAC"). Brahmana started his employment as a "Director of Sales and Marketing" and was responsible for CyberData's Voice-Over-Internet-Protocol ("VoIP") and Point-of-Sale hardware products. *Id.* at ¶ 10. After a conflict arose between Lembo and Brahmana over CyberData's relationship with Conquest, Brahmana took a different position doing technical support and product management for the VoIP hardware business. *Id.* at ¶ 16. Some time after October of 2007, plaintiff was again tasked with sales and marketing of VoIP products. *Id.* at ¶ 20-21. On October 24, 2008, Lembo laid off Brahmana, citing the credit liquidity crisis as the reason.

While plaintiff was still employed with CyberData, he alleges that someone with the alias "SuperDooperCDsnooper" sent an email on July 29, 2008 to several CyberData employees "[i]mplying falsely that [Brahmana] did not have a bachelor's degree from UC Berkeley or a [m]aster's degree in [b]usiness [a]dministration, had a restraining order filed against him by his ex-wife, and that plaintiff considered himself to be the 'fifth (upcoming) Buddha" because his first name is similar to the last name of the Aria Metteyya Buddha who is supposed to appear in the distant future." *Id.* at ¶ 26. After Brahmana complained to Lembo, Lembo responded, "I know it is a CyberData employee sending the email, but my suggestion is to increase your sales to stop these emails." *Id.* at ¶ 27. Other CyberData employees were umcomfortable around Brahmana after the email was sent. *Id.* at ¶ 28.

After Brahamana's departure from CyberData, he states that he had a disagreement with Lembo about some outstanding wages, and indicated that a "wage claim would be filed" if his wages were not paid. *Id.* at ¶ 31. Lembo allegedly wrote "Go for it...and make sure you copy Joe Henard at the Santa Cruz District Attorneys office." *Id.* at ¶ 33. Brahmana states that he had never discussed his contact with Joe Henard from the Santa Cruz District Attorney's office with anyone. *Id.* at ¶ 35. Brahmana also states that his contact concerned a driver's license renewal application.

*Id.* Brahmana later learned from other CyberData employees that Lembo used monitoring tools, such as "Local Area Network Analyzers and keyloggers" to monitor the activities of CyberData employees. *Id.* at ¶ 36. He alleges that Lembo intercepted his password with a key logger tool, logged into his personal email account, and read his personal email. *Id.* at ¶ 39-40. Brahmana states that he never gave any defendant permission to access his personal email accounts or permission to intercept any personal communication when logging into his personal email account. *Id.* at ¶ 37. He also states that he has never shared his personal email password with anyone. *Id.* at ¶ 38.

Brahmana filed suit on January 9, 2009, and filed an amended complaint on January 12, 2009. His amended complaint includes causes of action for violation of his privacy rights under the Fourth Amendment, violation of the Electronic Communications Privacy Act ("ECPA"), and California state law claims for a false-light tort, hostile work environment, wrongful constructive discharge, and wrongful termination. Defendants now move to dismiss all of Brahmana's federal claims and to dismiss the action for lack of jurisdiction. Defendant Conquest has also moved to dismiss the action for insufficient service of process. Finally, Lembo moved on May 6, 2009 to continue the case management conference schedule for Friday, May 22, 2009.

## II. ANALYSIS

### A.  Plaintiff's Fourth Amendment Claim

Brahmana's first claim is for violation of his "privacy rights" under the Fourth Amendment to the United States Constitution. But "[t]he Fourth Amendment gives protection against unlawful searches and seizures, and as shown in the previous cases, its protection applies to *governmental action*. Its origin and history clearly show that it was intended as a restraint upon the activities of sovereign authority, and was not intended to be a limitation upon *other than governmental agencies*;". *Burdeau v. McDowell*, 256 U.S. 465, 474-475 (1921) (emphasis added); *see also United States v. Jacobsen*, 466 U.S. 109, 118 (1984). Brahmana has not alleged any connection between defendants' complained-of actions and the government. The fourth amendment claim is therefore dismissed.

### B.  Plaintiff's Electronic Communications Privacy Act Claim

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; GRANTING MOTION TO QUASH SERVICE AND DISMISS COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS; GRANTING MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE—No. C-09-00106 RMW
JAS    3

1  In 1986, Congress passed the ECPA, which was intended to extend privacy protection to electronic communications. *Konop v. Hawaiian Airlines, Inc.*, 302 F.3d 868, 874 (9th Cir. 2002). Title I of the ECPA amended the federal Wiretap Act, which until then addressed only wire and oral communications, to cover the "interception of electronic communications." *Id.* The amended Wiretap Act makes it an offense to "intentionally intercept[] . . . any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a). The Act further proscribes "the intentional[] use[ of] . . . the contents of any wire, oral, or electronic communication, knowing or having reason to know that the information was obtained through the interception of a wire, oral, or electronic communication . . . ." 18 U.S.C. § 2511(1)(d).

In support of his ECPA claim, Brahmana alleges first that Lembo used "software and hardware monitoring tools such as local area network analyzers and key loggers" to obtain the password to his personal email account. And second, Brahmana alleges that Lembo's accessed Brahmana's personal email account using the logged password.

As an initial matter, the law in the Ninth Circuit is clear that gaining access to stored electronic information does not constitute a violation of § 2511. *Konop*, 302 F.3d at 878. That is, to "intercept" electronic communications means to acquire it during transmission, not while it is in electronic storage. *Id.* In *Konop*, the court concluded that the access to a protected section of a website does not constitute a violation of the Wiretap Act, reasoning that there is no interception of electronic communications, but only access to stored electronic information. *Id.* at 872-873, 879. Brahmana's claim that Lembo's access to his stored personal email by itself violates § 2511(1)(a) is precluded by *Konop*, and therefore does not constitute a violation of § 2511(1)(a).[1]

Brahmana's claim that Lembo's use of a key logger or network analyzer violates § 2511 potentially fares better. A key logger records each keystroke entered by the user of a particular computer. *See United States v. Ropp*, 347 F.Supp. 2d 831 (C.D.Cal. 2004). Although it is not

---

[1] Depending on whether the alleged interception of Brahmana's keystrokes constitutes a violation of the Act, the use of the intecepted password may nonetheless constitute a violation of 2511(1)(d), which forbids the intentional *use* of information acquired through the interception of electronic communications, when the user knows or has reason to know of the interception. 18 U.S.C. 2511(1)(d).

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; GRANTING MOTION TO QUASH SERVICE AND DISMISS COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS; GRANTING MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE—No. C-09-00106 RMW
JAS                                                        4

defined in the pleadings, it seems that a network analyzer performs a similar function but over a network connection. In *Ropp*, the court considered whether a hardware-based key logger – a device attached between the keyboard and the computer's central processing unit ("CPU") – intercepted electronic communications in violation of § 2511. *Id.* The Wiretap Act defines "electronic communication" as "any transfer of signs, signals, writing, images, sounds, data, or intelligence of any nature transmitted in whole or in part by a wire, radio, electromagnetic, photoelectronic, or photooptical system that affects interstate or foreign commerce." 18 U.S.C. § 2510(12). Because the key logger in *Ropp* recorded the keystroke information in transit between the keyboard and the CPU, the court found that the system transmitting the information did not affect interstate commerce as the statute requires. *Ropp*, 347 F.Supp. 2d 837-38. The keystroke signals, therefore, were not "electronic communication" under the Wiretap Act. *Id.* Assuming *Ropp*'s construction of the Act is correct, focus on whether the transmitting system affects interstate commerce is the appropriate inquiry in this case.

      The court in *Porter v. Havlicek,* 2007 WL 539534 (S.D.Ohio 2007), however, questions whether *Ropp*'s construction of "affecting interstate commerce" is correct. It suggests that *Ropp* reads the statute as requiring that the communication must be traveling in interstate commerce as opposed to merely "affecting interstate commerce." *Id.* at *9. The keystrokes, while not traveling in interstate commerce, do "affect interstate commerce." *Id.* The court does not need to resolve at this time whether *Ropp* or *Porter*'s analysis of "affecting interstate commerce" is correct.

      According to the complaint, Lembo recorded Brahmana's keystrokes entering his email password using "software and hardware monitoring tools such as local area network analyzers and key loggers." FAC at ¶ 36. Brahmana supports his claims concerning Lembo's actions by alleging that Lembo knew of the contents of his private email, and that Brahmana had learned from other CyberData employees that such tools were used to monitor the activities of CyberData employees. *Id.* at ¶ 33, 36. These allegations are sufficient to render plausible the claim that Brahmana's communications were monitored in some way, but they do not specify whether the particular means of monitoring might monitor keystrokes that had actually affected interstate commerce. The issue of

how any alleged monitoring took place and whether it allegedly affected interstate commerce is better resolved after some discovery. Because, under the complaint, some means of the alleged monitoring may constitute a violation of the Wiretap Act, dismissal of Brahmana's complaint for violation of ECPA is premature. Lembo's motion is therefore denied.

### C. Plaintiff's Claim for Hostile Work Environment

Lembo argues in his motion to dismiss that Brahmana fails to state a claim for a Title VII hostile-work-environment claim. But the complaint itself seeks relief for a hostile work environment only under California law. FAC at ¶ 49. While Brahmana argues in his opposition that the complaint sufficiently states a Title VII claim, the court must adjudicate the motion to dismiss on the basis of the pleadings alone. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001). The court therefore will not consider whether a claim that does not appear in the complaint should be dismissed.

### D. Conquest's Motion to Quash Service and Dismiss the Complaint

Conquest also moves to quash service on Conquest and dismiss the complaint against it because Lembo, who Brahmana served on behalf of Conquest, is not authorized to receive service on its behalf. Brahmana argues that service was proper because Lembo is a 10% shareholder in Conquest and has a managerial role in Conquest. Opp. to Mot. to Quash 2.

Rule 4(h)(1)(B) allows service on a corporation "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). The relevant inquiry is not the percentage of stock owned, but whether the individual served is "so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable, and just to imply the authority on his part to receive service." *Direct Mail Specialists, Inc. v. Eclat Computerized Technologies, Inc.*, 840 F.2d 685, 688 (9th Cir. 1988). Merely owning a 10% shareholder stake in Conquest does not constitute sufficient authority for Lembo to receive service on behalf of Conquest. As for Lembo's managerial role, the evidence Brahmana offers does not

1 establish that Lembo has sufficient managerial responsibilities to constitute a proper agent for
2 service. The emails in Brahmana's declaration do not establish that Lembo has any mangerial role.
3 *See* Decl. of Metteyya Brahmana ISO Opp. to Mot. to Quash Exs. A-C. The court therefore quashes
4 the service on Conquest as inadequate, and dismisses the complaint against it without prejudice.
5 The court questions, however, whether insisting on technically proper service will assist the parties
6 in effectuating an economical and speedy disposition of the case.

### E.  Lembo's Motion to Continue the Case Management Conference

On May 6, 2009, Lembo moved to continue the Case Management Conference scheduled for May 22, 2009 for 60 days because the present order had not issued. The court concludes that approximately 30 days continuance is sufficient to allow the parties to adequately prepare for the Case Management Conference.

### III.  ORDER

For the foregoing reasons, the court grants the motion to dismiss the Fourth Amendment claim with prejudice and denies the motion as to the claim under the Electronic Communications Privacy Act. The court finds that the complaint does not include a Title VII claim. The court grants the motion by Conquest Technology Limited to quash service and dismiss the complaint for insufficient service of process. Plaintiff shall have 20 days leave to amend except as to the Fourth Amendment claim. The Case Management Conference currently scheduled for May 22, 2009 is continued to June 19, 2009.

DATED:     05/20/09                          *Ronald M Whyte*
                                             RONALD M. WHYTE
                                             United States District Judge

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; GRANTING MOTION TO QUASH SERVICE AND DISMISS COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS; GRANTING MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE—No. C-09-00106 RMW
JAS                                           7

**Notice of this document has been sent to:**

**Plaintiff:**

Metteyya Brahmana
2636 17th Avenue
Box 79
Santa Cruz, CA 95062
831-212-2731

**Counsel for Defendants:**

James Joseph Cook          jcook@horanlegal.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   05/20/09                                                   JAS
                                                          **Chambers of Judge Whyte**

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM; GRANTING MOTION TO QUASH SERVICE AND DISMISS COMPLAINT FOR INSUFFICIENT SERVICE OF PROCESS; GRANTING MOTION TO CONTINUE CASE MANAGEMENT CONFERENCE—No. C-09-00106 RMW
JAS                                                                           8