E-FILED on    3/17/10

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| METTEYYA BRAHMANA,<br><br>  Plaintiff,<br><br>  v.<br><br>PHILLIP CHARLES LEMBO, CYBERDATA CORPORATION, NUMONIX, INC., CONQUEST TECHNOLOGY LIMITED, and CAMERON BARFIELD,<br><br>  Defendants. | No. C-09-00106 RMW<br><br>ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOURTH AMENDED COMPLAINT AND TO STRIKE DAMAGE CLAIMS<br><br>[Re: Docket No. 151] |

Defendants Phillip Charles Lembo, Cyberdata Corporation, Numonix, Inc., Conquest Technology Limited, and Cameron Barfield move to dismiss portions of plaintiff Metteyya Brahmana's Fourth Amended Complaint ("FAC") and to strike some of plaintiff's damage claims. For the reasons set forth below, the court grants in part and denies in part the motion.

## II. MOTION TO DISMISS

**A. Title VII Claims (Counts One, Two, and Three)**

Counts One, Two, and Three are claims brought under Title VII. Defendants move to dismiss these Title VII claims for lack of subject matter jurisdiction. In order for this court to have subject matter jurisdiction over plaintiff's Title VII claims, plaintiff must have exhausted his administrative remedies. *B.K.B. v. Maui Police Dept.*, 276 F.3d 1091, 1100 (9th Cir. 2002). The court therefore examines whether Brahmana exhausted his administrative remedies.

1    Before bringing a civil action under Title VII, a plaintiff must first file a timely charge with
2    the Equal Opportunity Employment Commission ("EEOC"). 42 U.S.C. § 2000e-5(f). In a state
3    where there is a state or local law prohibiting the unlawful employment practice and authorizing a
4    state or local authority to grant or seek relief from such practice, a charge cannot be filed with the
5    EEOC until "the expiration of sixty days after proceedings have been commenced under State or
6    local law, unless such proceedings have earlier been terminated." 42 U.S.C. § 2000e-5(c).
7    Generally, one must file the charge with the EEOC "within one hundred and eighty days after the
8    alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e)(1). However, in a
9    deferral state, if the aggrieved person "initially instituted proceedings with a State or local agency
10   with authority to grant or seek relief" from the alleged unlawful employment practice, then the
11   charge need only be filed with the EEOC within 300 days after the alleged unlawful employment
12   practice occurred. *Id.*
13   On June 9, 2009, Brahmana submitted an EEOC intake questionnaire. Opp'n Ex. B. On this
14   intake questionnaire, he checked a box which stated, in part, "I want to file a charge of
15   discrimination, and I authorize the EEOC to look into the discrimination I described above." *Id.*
16   The parties dispute whether submission of this questionnaire constituted filing a charge with the
17   EEOC. In *Federal Express Corp. v. Holowecki*, the Supreme Court held that for a filing to be
18   deemed a charge, it must contain the information required by regulations and "be reasonably
19   construed as a request for the agency to take remedial action to protect the employee's rights or
20   otherwise settle a dispute between the employer and the employee." 552 U.S. 389, 402 (2008).
21   Because Brahmana checked the box indicating that he wanted to file a charge of discrimination, the
22   questionnaire is reasonably construed as a request for the agency to take remedial action. In
23   addition, the questionnaire contains sufficiently precise information identifying the parties and
24   describing generally the practices complained of, as required by 29 C.F.R. § 1601.12(b). Since
25   federal regulations permit amendment "to cure technical defects or omissions, including failure to
26   verify the charge, or to clarify and amplify allegations made therein," *id.*, it appears that submission
27   of the questionnaire is sufficient to constitute a charge, though amendment may be necessary.
28

Defendants contend that even if submitting the EEOC questionnaire constituted filing a charge, it was untimely because it was submitted more than 180 days after plaintiff's termination. It is undisputed that the latest discriminatory act alleged to have occurred was the termination of Brahmana's employment on October 24, 2008, FAC ¶ 9, and plaintiff did not submit the EEOC questionnaire until June 9, 2009, more than 180 days after the alleged unlawful employment practice occurred, Opp'n Ex. B. However, in a deferral state like California, if the aggrieved party initially initiates proceedings seeking relief from a state or local agency, then the charge need only be filed with the EEOC within 300 days of the alleged unlawful employment practice. 42 U.S.C. § 2000e-5(e)(1). The court therefore considers whether plaintiff initially instituted state proceedings within the meaning of Title VII.

It appears that, other than submitting the EEOC questionnaire, Brahmana has not taken any action to initiate state proceedings. Plaintiff contends that submission of the EEOC questionnaire alone was sufficient to initiate state proceedings. Under 29 C.F.R. § 1601.13, the EEOC is required to refer documents that "may constitute a charge cognizable under title VII" to the appropriate state agency. Since the EEOC questionnaire could constitute a cognizable EEOC charge, the EEOC had a duty to refer plaintiff's complaint to the appropriate state agency. It appears that the EEOC did not refer Brahmana's complaint to a state agency in this case. However, the Ninth Circuit has held that complainants are not to be prejudiced by the EEOC's failure to fulfill its duty. *Williams v. Owens-Illinois, Inc.*, 665 F.2d 918, 923 n.2 (9th Cir. 1982). Thus, for exhaustion purposes, the court treats plaintiff's EEOC questionnaire as if it had been referred to the appropriate state agency. The question remains whether the EEOC questionnaire, if it had been referred to the appropriate state agency, would have sufficed to initiate state proceedings.

Title VII does not explicitly state what is required to constitute having "initially instituted" state proceedings, as required to trigger the 300 day deadline under 42 U.S.C. § 2000e-5(e). However, 42 U.S.C. § 2000e-5(c) – the subsection setting forth the requirement that state proceedings be commenced prior to filing an EEOC charge – states that "[i]f any requirement for the commencement of such proceedings is imposed by a State or local authority other than a requirement of the filing of a written and signed statement of the facts upon which the proceeding is

based, the proceeding shall be deemed to have been commenced for the purposes of this subsection at the time such statement is sent by registered mail to the appropriate State or local authority." This explanation provides helpful guidance for determining when a state proceeding has been deemed "instituted" under subsection (e). Furthermore, independent of the 300 or 180 day deadline, plaintiff must satisfy the requirement of having commenced state proceedings, as defined in subsection (c), prior to filing an EEOC charge.

California law requires aggrieved persons to file a verified, written complaint with the Department of Fair Employment and Housing ("DFEH"). Cal. Gov. Code § 12960(b). It is clear that where state law sets forth additional requirements for filing a formal complaint, the state proceeding is deemed commenced upon the mailing of a "written and signed statement of the facts upon which the proceeding is based." 42 U.S.C. § 2000e-5(c). The EEOC questionnaire upon which plaintiff relies does not contain his signature. Opp'n Ex. B. Therefore, submission of the EEOC questionnaire is not sufficient to constitute commencing state proceedings under subsection (c), nor is it sufficient to constitute initially instituting state proceedings as required to trigger the 300 day deadline under subsection (e).[1] 42 U.S.C. §§ 2000e-5(c),(e). The court therefore dismisses plaintiff's Title VII claims (Counts One, Two, and Three) for failure to exhaust his administrative remedies. The court grants leave to amend so that plaintiff has the opportunity to allege facts showing that he has taken actions other than submitting the EEOC questionnaire to satisfy Title VII's jurisdictional requirements, if he can do so in good faith.

---

[1] In arguing that submission of the EEOC questionnaire is sufficient to meet Title VII's requirements, Brahmana relies heavily upon *Love v. Pullman Co.*, 404 U.S. 522 (1972). In *Love*, an individual complained of discrimination to the EEOC without first taking steps to commence state proceedings, the EEOC orally referred the complaint to the state agency, and the EEOC formally filed the complaint as a charge only after the state agency indicated that it declined to take action. 404 U.S. at 523-24. The Supreme Court rejected the idea that "state proceedings may not be initiated by the EEOC acting on behalf of the complainant rather than by the complainant himself" and held that Title VII's requirements had been met. *Id.* at 525. However, *Love* does not suggest that merely sending a complaint to the EEOC is always sufficient to satisfy Title VII's requirement that state proceedings be commenced prior to filing an EEOC charge. To the contrary, the Supreme Court took care to note in its decision that the filing procedure sufficed in that case because there was no "requirement that the complaint to the state agency be made in writing rather than by oral referral." *Id.* If there had been state laws or regulations in place making it more difficult to commence state proceedings, then 42 U.S.C. § 2000e-5(c) would have come into play. *Id.* at 525 n.4.

### B. FEHA Claims (Counts Four, Five, and Seven)

Counts Four, Five, and Seven are claims brought under the California Fair Employment and Housing Act ("FEHA"). Defendants move to dismiss these FEHA claims for lack of subject matter jurisdiction. In order for the court to have subject matter jurisdiction over plaintiff's FEHA claims, plaintiff must have exhausted his administrative remedies. *Blum v. Superior Court*, 141 Cal. App. 4th 418, 422 (2006). "Under the FEHA, the employee must exhaust the administrative remedy provided by the statute by filing a complaint with the [DFEH] and must obtain from the [DFEH] a notice of right to sue to be entitled to file a civil action in court based on violations of the FEHA." *Id.*

Brahmana does not claim that he independently filed a complaint with the Department of Fair Employment and Housing ("DFEH"). He argues that he exhausted his administrative remedies, based solely on his submission of the EEOC questionnaire and the EEOC's duty to refer documents which may constitute a charge to the appropriate state agency under 29 C.F.R. § 1601.13(a)(4)(I). However, in order to bring a civil suit, one must have first filed a *verified* complaint with the DFEH. Cal. Gov. Code § 12960(b); *see also Blum*, 141 Cal. App. 4th 418, 422 (2006). As discussed above, the EEOC questionnaire was not signed, much less verified. Opp'n Ex. B. The court therefore dismisses plaintiff's FEHA claims (Counts Four, Five, and Seven) for failure to exhaust his administrative remedies. The court grants leave to amend to allow plaintiff the opportunity to allege facts showing that he has taken actions other than submitting the EEOC questionnaire to satisfy FEHA's jurisdictional requirements, if he can do so in good faith.

### C. Count Nine - False Light Claim

To state an actionable false light claim, plaintiff must allege facts showing that he was placed in a false light that would be "highly offensive to a reasonable person." *Fellows v. National Enquirer, Inc.*, 42 Cal. 3d 234, 238 (1986). "To avoid a conflict with First Amendment rights, courts have narrowly construed the 'highly offensive' standard." *Silva v. Hearst Corp.*, 1997 U.S. Dist. LEXIS 22653, at *6 (C.D. Cal. Aug. 25, 1997) (citing *Machleder v. Diaz*, 801 F.2d 46, 48 (2nd Cir. 1986)). In addition, plaintiff must allege facts showing that defendants acted negligently in failing to learn whether the publicized fact placed him in a false light. *See Fellows*, 42 Cal. 3d at

United States District Court
For the Northern District of California

248 (holding that the restrictions on liability for defamation apply equally to false light claims); *Khawar v. Globe Internet*, 19 Cal. 4th 254, 274 (1998) ("In California, this court has adopted a negligence standard for private figure plaintiffs seeking compensatory damages in defamation actions.").

Brahmana's false light claim is based on the following statements in an email sent to CyberData employees:

> Checking Monterey County Superior Court records yields a family court case involving Matt and Yanina Shevchenko. Sounds like a Ukranian name, and I'm pretty sure Matt's wife is Ukranian. My best guess is that this was a restraining order. Filing date was 08 February 2008. [followed by URL] . . .
>
> Metta Motors' web site claims Matt has an MBA from Babson College, which I have not been able to confirm. It also claims a Bachelor's in Environmental Economics and Policy, which I have not been able to confirm. . . .
>
> If you're curious, Metteyya is the name of the fifth (upcoming) Buddha. Brahmanas are ancient Hindu texts describing how to perform certain rituals.

Reply in Supp. of Mot. for Leave to File Fourth Am. Compl. Ex. B.[2]

The comments about the meaning of "Brahmana" and "Metteyya" do not rise to the level of being "highly offensive to a reasonable person." *Fellows*, 42 Cal. 3d at 238. The court therefore dismisses the false light claim based on these comments with prejudice.

As for the remaining statements, the FAC does not contain factual allegations suggesting negligence by the defendants. The court therefore dismisses these false light claims.[3] The court grants leave to amend to allow plaintiff the opportunity to allege facts showing that defendants acted

---

[2] In ruling on a motion to dismiss, the court may consider documents whose contents are alleged in the complaint when there is no dispute regarding the authenticity of the document. *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998). Brahmana attached a copy of the email which forms the basis for his false light claim as Exhibit B to his Reply in Support of his Motion for Leave to File a Fourth Amended Complaint. The parties do not contest the authenticity of this document. Therefore, the court considers the contents of this email in determining whether Brahmana has stated a false light claim.

[3] Defendants have not shown that an email sent to all CyberData employees fails to meet the requirement of "publicity in the sense of communication to the public in general or to a large number of persons as distinguished from one individual or a few." *Porten v. Univ. of San Francisco*, 64 Cal. App. 3d 825, 828 (1976). The court also finds that the privilege in Cal. Civ. Code § 47(c) does not apply. As for defendants' workers' compensation argument, defendants have failed to cite (and this court has not found) any cases suggesting that false light claims are barred under the workers' compensation exclusivity rule in California.

ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS FOURTH AMENDED COMPLAINT AND TO STRIKE DAMAGE CLAIMS—No. C-09-00106 RMW
CCL                                                6

negligently in failing to learn whether the publicized facts placed him in a false light, if he can do so in good faith.

### D. Count Twelve - Violation of California Labor Code § 96(k)

Standing alone, California Labor Code § 96(k) "does not set forth an independent public policy that provides employees with any substantive rights, but rather, merely establishes a procedure by which the Labor Commissioner may assert, on behalf of employees, recognized constitutional rights." *Grinzi v. San Diego Hospice Corp.*, 120 Cal. App. 4th 72, 84 (2004) (quoting *Barbee v. Household Automotive Finance Corp.*, 113 Cal. App. 4th 525, 533 (2003)). Under the Labor Code Private Attorneys General Act of 2004, however, aggrieved employees may bring a civil action for violations of the labor code, including § 96(k). Cal. Lab. Code § 2699(a).

In order to bring a civil action for violation of § 96(k), the aggrieved employee must have exhausted his administrative remedies. Cal. Lab. Code §§ 2699.3(a), 2699.5. In particular, the employee must give written notice to the Labor Workforce Development Agency and his employer of his complaint and then wait 33 days or until the agency notifies him that it does not intend to investigate before commencing a civil action. Cal. Lab. Code §§ 2699.3(a)(1), (2)(A). If the agency notifies the employee that it intends to investigate, then he must wait another 125 days or until the agency notifies him that no citation will be issued before commencing a civil action. Cal. Lab. Code § 2699(a)(2)(B).

Plaintiff admits that he has not exhausted his administrative remedies. The court therefore dismisses Count Twelve with prejudice.

### E. Count Thirteen - Violation of California Labor Code §§ 1101 & 1102

California Labor Code § 1101 prohibits employers from having "any rule, regulation, or policy: (a) Forbidding or preventing employees from engaging or participating in politics or from becoming candidates for public office. (b) Controlling or directing, or tending to control or direct the political activities or affiliations of employees." Under California Labor Code § 1102, "[n]o employer shall coerce or influence or attempt to coerce or influence his employees through or by means of threat of discharge or loss of employment to adopt or follow or refrain from adopting or following any particular course or line of political action or political activity."

The only factual basis in the FAC for plaintiff's claims under §§ 1101 and 1102 is his statement that "[d]efendant Phillip Lembo seemed to also be bothered by plaintiff's decision to spend 15 minutes in the morning of October 24, 2008, arranging for last minute travel arrangements and accommodations to meet presidential candidate Barack Obama for the first time during the following weekend in Reno, Nevada." FAC ¶ 30. Though plaintiff was laid off on October 24, 2008, the FAC gives a myriad of reasons for his layoff, none of which suggest that he was laid off for making travel arrangements to meet Obama. *See, e.g.,* FAC ¶ 30 (alleging that Lembo "decided to layoff plaintiff rather than sell the $1.4 million CyberData jet to solve any financial problems at CyberData); FAC ¶ 57 (alleging defendants "terminated plaintiff for upholding his Buddhist values . . . and in retaliation for plaintiff complaining to defendant Lembo regarding emails . . . that insulted plaintiff's Buddhist religion, and in retaliation for complaining about the hostile work environment at CyberData). More importantly, the FAC does not allege the existence of any rule, regulation, or policy forbidding CyberData employees from participating in politics or controlling their political activities, nor does it allege that plaintiff was coerced by threat of discharge to adopt or refrain from adopting any course of political activity. The court therefore dismisses Count Thirteen with prejudice for failure to state a claim for which relief can be granted.

### F. Count Fourteen - Negligent Infliction of Emotional Distress

In its January 15, 2010 order, this court denied leave to amend the complaint to add a claim for negligent infliction of emotional distress. January 15, 2010 Order at 4. The court dismisses this claim with prejudice.

### G. Dismissal of Lembo

Defendant Phillip Charles Lembo ("Lembo") contends that he should be dismissed as a defendant from Counts Six, Eight, and Ten because none of these causes of action provide for individual liability. Count Six is a claim for wrongful constructive discharge and is based on plaintiff's allegation that he was demoted in violation of an express and implied contract between him and CyberData. FAC ¶¶ 11, 22, 64. Count Eight is a claim for wrongful termination. This claim is based on plaintiff's allegation that he was terminated from employment in violation of an express and implied contract between him and CyberData and in violation of various public policies.

FAC ¶¶ 11, 30, 68, 69. Since both of these claims are based on acts by Lembo acting "in his capacity as owner, manager, and agent of Conquest, CyberData, and Numonix," FAC ¶¶ 22, 30, plaintiff has failed to state either claim against Lembo as an individual.

Count Ten is a claim for invasion of privacy and is based on plaintiff's allegation that his social security number and salary were displayed on a company database and accessible to all CyberData employees who used the database. FAC ¶¶ 38, 39, 73. The FAC does not allege that Lembo placed this information on the company database or took other actions that violated his right to privacy. Therefore, plaintiff has failed to state this claim against Lembo as an individual.

Brahmana argues that Lembo is personally liable for each of these claims because the corporate veil has been pierced. The only factual allegation in the FAC supporting his assertion that the corporate veil has been pierced is plaintiff's claim that "the $1.4 million dollar CyberData corporate jet [was] used by Lembo primarily for frequent personal trips." FAC ¶ 13. Though the court has provided plaintiff with additional time to research this issue and has allowed additional briefing on this matter, plaintiff has failed to cite a single case showing that mere use of a corporate jet for frequent personal trips is sufficient to pierce the corporate veil.

To pierce the corporate veil through a claim of alter ego, plaintiff must show: "(1) there is such a unity of interest that the separate personalities of the corporation [and the individual] no longer exist; and (2) inequitable results will follow if the corporate separateness is respected." *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App. 4th 1269, 1285 (1994). While the facts of each case vary, critical facts to consider are whether there was inadequate capitalization, commingling of assets, and disregard of corporate formalities. *Id.* In addition, plaintiff must show that "honoring the corporate shell would promote a fraud or injustice." *Id.* at 1285 n.13. The FAC does not allege facts establishing the required unity of interest between Lembo and CyberData, nor does it contain factual allegations showing that honoring the corporate shell would promote fraud or injustice. The court finds no basis for piercing the corporate veil and dismisses Counts Six, Eight, and Ten as asserted against Lembo. The court grants leave to amend to allow plaintiff the opportunity to allege facts providing a basis for piercing the corporate veil, if he can do so in good faith.

**H. Dismissal of Conquest**

Defendant Conquest Technology Limited ("Conquest") contends that it should be dismissed from this action entirely. The FAC does not contain factual allegations supporting any actionable claim against Conquest. Plaintiff does not allege that Conquest was his employer, nor does he allege any facts indicating that Conquest caused him any harm. Nonetheless, Brahmana argues that Conquest should remain as a defendant based on his allegation that Conquest "was the alter ego of and/or principal in a principal-agent relationship with defendant CyberData Corporation, Numonix Inc., Phillip Lembo, and several other CyberData/Numonix employees." FAC ¶ 8. However, a plaintiff must provide the factual basis for his claims and cannot merely plead legal conclusions. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, merely alleging alter ego status or the existence of a principal-agent relationship, without providing factual support for this conclusory allegation, is insufficient. Because plaintiff has pleaded only legal conclusions and failed to provide any factual support for his alter ego and agency claims, the court dismisses Conquest as a defendant. The court grants leave to amend to allow plaintiff the opportunity to allege a factual basis for his alter ego and agency claims, if he can do so in good faith.

### III. MOTION TO STRIKE DAMAGE CLAIMS

Defendants ask the court to strike from the FAC various requests for damages that cannot be awarded as a matter of law. *See Barefield v. Cal. State Univ. Bakersfield*, 2006 U.S. Dist. LEXIS 21677, *19 (E.D. Cal. Mar. 28, 2006) ("courts regularly use Fed. R. Civ. Proc. 12(f) to strike from complaints requests for damages that can not be awarded as a matter of law"). Though the court has provided plaintiff with additional time to respond to defendants' motion to strike damage requests and has allowed additional briefing on this matter, plaintiff has not opposed this motion.

**A. Wrongful Discharge (Counts Six and Eight)**

When a wrongful discharge action is based on breach of contract, "neither compensatory damages for emotional distress nor punitive damages are recoverable." *Fidler v. Hollywood Park Operating Co.*, 223 Cal. App. 3d 483, 487 (1990); *see also Foley v. Interactive Data Corp.*, 47 Cal. 3d 654, 700 (1988). Count Six (wrongful constructive discharge) is based on an alleged breach of

United States District Court
For the Northern District of California

contract. FAC ¶¶ 11, 22, 64. Thus, with respect to Count Six, plaintiff's request for punitive damages and damages for emotional distress is stricken.

Count Eight (wrongful termination) is based on both breach of contract and violation of various public policies. FAC ¶¶ 11, 30, 68, 69. "An actual or constructive discharge in violation of fundamental public policy gives rise to a tort action in favor of the terminated employee." *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1252 (1994). Since plaintiff may seek tort remedies for this claim, the court declines to strike his request for punitive damages and damages for emotional distress under Count Eight.

### B. Count Fifteen - ECPA Claim

The Electronic Communications Privacy Act ("ECPA") limits the type of damages that a plaintiff can recover for an ECPA claim. A prevailing party may recover "the sum of the actual damages suffered by the plaintiff and any profits made by the violator as a result of the violation" and may also recover punitive damages if the violation was willful or intentional. 18 U.S.C. § 2707(c). Accordingly, plaintiff's request for damages for emotional distress, back pay damages, and front pay damages is stricken.

## IV. ORDER

For the foregoing reasons, the court:

1. Dismisses Counts One, Two, Three, Four, Five, and Seven with leave to amend;
2. Dismisses Count Nine to the extent it relies on statements about the meaning of "Brahmana" and "Metteyya" with prejudice and otherwise with leave to amend;
3. Dismisses Counts Twelve, Thirteen, and Fourteen with prejudice;
4. Dismisses Counts Six, Eight, and Ten as asserted against Lembo with leave to amend;
5. Dismisses Conquest as a defendant with leave to amend;
6. Strikes plaintiff's request for punitive damages and damages for emotional distress based on Count Six; and

7. Strikes plaintiff's request for damages for emotional distress, back pay damages, and front pay damages based on Count Fifteen.

Plaintiff shall have 10 days to amend his complaint. Amendment shall be limited to the specific factual issues set forth by the court in this order.

DATED:   3/17/10

*Ronald M Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Plaintiff:**

Metteyya Brahmana          mbrahmana@gmail.com

**Counsel for Defendants:**

James Joseph Cook          jcook@horanlegal.com
Michael Patrick Burns      mburns@horanlegal.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   3/17/10                                          CCL
                                                    **Chambers of Judge Whyte**