UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| METTEYYA BRAHMANA,<br><br>        Plaintiff,<br><br>    v.<br><br>PHILIP CHARLES LEMBO, et al.,<br><br>        Defendants. | Case No.: C 09-0106 PSG<br><br>**ORDER RE PENDING MOTIONS TO DISMISS AND FOR PARTIAL SUMMARY JUDGMENT**<br><br>(Docket Nos. 189, 198, 247, and 203) |

      Pending before the court are: Defendants' Motion to Dismiss Counts 1-5, 7 and 9 of Plaintiff's Fifth Amended Complaint (Docket No. 189); Defendants' Motion for Summary Judgment as to Counts 6, 8 and 10-12 of Plaintiff's Fifth Amended Complaint (Docket No. 198); Defendants' Motion for Summary Judgment as to Counts 1-5, 7 and 9 of Plaintiff's Fifth Amended Complaint (Docket No. 247); and Plaintiff's Motion for Partial Summary Judgment (Docket No. 203). Based on the briefs and arguments submitted,

      IT IS HEREBY ORDERED that Defendants' motions for summary judgment are GRANTED as to Counts 1-7, and 10-12 of Plaintiff's Fifth Amended Complaint.

      IT IS FURTHER ORDERED that Defendants' motions for summary judgment are DENIED as to Counts 8 and 9 of Plaintiff's Fifth Amended Complaint.

      IT IS FURTHER ORDERED that Plaintiff's motion for partial summary judgment is

DENIED.

IT IS FURTHER ORDERED that Defendants' motion to dismiss is DENIED as moot based on the other rulings herein.

## I. BACKGROUND[1]

Plaintiff Metteyya Brahmana ("Brahmana") alleges he was employed by Defendant Cyberdata Corporation ("CyberData") from August 1, 2005 until October 24, 2008.[2] Brahmana started his employment as a "Director of Sales and Marketing" and was responsible for CyberData's Voice-Over-Internet-Protocol ("VoIP") hardware. Brahmana also shared responsibility for CyberData's "point-of-sale" hardware products.[3] After a conflict arose between CyberData President Phillip Lembo ("Lembo") and Brahmana over CyberData's relationship with Defendant Conquest Technology Limited ("Conquest"), Lembo assigned Brahmana in July 2006 to a different position providing technical support and product management for the VoIP hardware business.[4] Brahmana alleges he continued to receive the same salary in the new position, but his commission rate was reduced from 6 percent to 2 percent.[5]

Some time after October of 2007, Brahmana was again tasked with sales and marketing of VoIP products, and his commission rate was restored to 6 percent.[6]

Brahmana alleges that on July 29, 2008, Defendant Cameron Barfield ("Barfield"), using the alias "SuperDooperCDsnooper," sent an email to several CyberData employees suggesting that Brahmana considered himself to be the "fifth (upcoming) Buddha" because his first name is similar to the last name of the Aria Metteyya Buddha who is supposed to appear in the distant future, that Brahmana did not have a bachelor's degree from UC Berkeley or a Master's degree in Business

---

[1] For further background on this dispute, *see* 3/17/10 Order Granting in Part and Denying in Part Motion to Dismiss Fourth Amended Complaint and to Strike Damages Claims ("3/17/10 Order") (Docket No. 186).

[2] Fifth Amended Complaint ("FAC") ¶ 9.

[3] *Id*. at ¶ 10.

[4] *Id*. at ¶ 15-22.

[5] *Id*. at ¶ 22.

[6] *Id*. at ¶ 26.

1  Administration from Boston College, and that he had a restraining order filed either for or against
2  him.[7] After Brahmana complained to Lembo, Lembo responded, "I know it is a CyberData
3  employee who sent the email, but my suggestion is to increase your sales to stop these emails."[8]
4  Brahmana alleges that other CyberData employees were umcomfortable around Brahmana after the
5  email was sent.[9]

6  On October 24, 2008, Lembo laid off Brahmana, citing the credit liquidity crisis as the
7  reason for the layoff.[10]

8  On January 9, 2009, Brahmana filed this suit.

9  On June 9, 2009, Brahmana submitted an EEOC intake questionnaire.

10 On March 5, 2010 Brahmana sent to the EEOC a letter in which he verified, under penalty of
11 perjury, that:

12 "all information is true and correct that is contained in the charge filed with your office through the online questionnaire submitted on June 9, 2009 (See attached
13 questionnaire), and in the facts in support of the Title VII claims in the 2nd, 3rd, and 4th amended complaints sent to you via email in response to your July 31, 2009 email
14 questions to me, which are also attached to this letter."[11]

15 After a series of partially successful motions to dismiss by Defendants, Brahmana filed the
16 FAC on March 27, 2010.

17 **II. LEGAL STANDARDS**

18 **A.   MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION**

19 Rule 12(b)(1) authorizes a party to move to dismiss a claim for lack of subject matter
20 jurisdiction. Federal courts are courts of limited jurisdiction. They possess only the power
21 authorized by the Constitution and statute.[12] Thus, the court presumes lack of jurisdiction, and the

---

[7]   *Id*. at ¶¶ 31-33.

[8]   *Id*. at ¶ 34.

[9]   *Id*. at ¶ 35.

[10]  *Id*. at 30.

[11]  *See* 3/06/2010 Supplemental Declaration of Metteyya Brahmana in Opposition to Defendants' Motion to Dismiss ("Supplemental Brahmana Decl.") (Docket No. 174) Exhs. A and B.

[12]  *See Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994).

ORDER, *page 3*

party seeking to invoke the court's jurisdiction bears the burden of proving that subject matter jurisdiction exists.[13]  A party challenging the court's jurisdiction under Rule 12(b)(1) may do so by raising either a facial attack or a factual attack.[14]  "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction."[15]  In that event, "the court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction."[16]

**B.    MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of the complaint.  Dismissal is warranted where the complaint lacks a cognizable legal theory.[17]

A complaint also may be dismissed where it presents a cognizable legal theory, but fails to plead facts essential to the statement of a claim under that theory.[18]  The Supreme Court has held that, while a complaint does not need detailed factual allegations,

> "[a] plaintiff's obligation to provide 'grounds' of his 'entitle(ment) to relief' requires more than labels and conclusions . . . . Factual allegations must be enough to raise a right to relief above the speculative level."[19]

---

[13]   *See id.*

[14]   *See White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000).

[15]   *See Savage v. Glendale Union High Sen.*, 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).

[16]   *See Valentin v.. Hospital Bella Vista*, 254 F.3d 358, 363 (1st Cir. 2001) (citing *Rosales v. United States*, 824 F.2d 799, 803 (9th Cir. 1987) ("A district court may hear evidence and make findings of fact necessary to rule on the subject matter jurisdiction question prior to trial, if the jurisdictional facts are not intertwined on the merits.").

[17]   *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see also Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law").

[18]   *See Robertson*, 749 F.2d at 534.

[19]   *See Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

1   On a Rule 12(b)(6) motion, all facts are assumed to be true and construed in the light most favorable to the nonmoving party.[20] A *pro se* complaint "must be held to less stringent standards than formal pleadings drafted by lawyers."[21] At the same time, the court is not required to accept "conclusory legal allegations cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."[22]

**C.   MOTIONS FOR SUMMARY JUDGMENT**

Under Rule 56(c) of the Federal Rules of Civil Procedure, the court shall grant summary judgment if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[23] If the moving party meets its initial burden, then the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."[24] However, the moving party in not required to negate the elements of the non-moving party's case on which the non-moving party bears the burden of proof.[25]

The court must draw all justifiable inferences in favor of the non-moving party.[26] The opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts."[27]

It is the court's responsibility "to determine whether the 'specific facts' set forth by the non-moving party, coupled with undisputed background or contextual facts, are such that a rational or

---

[20]   *See Cervantes v. United States*, 330 F.3d 1186, 1187 (9th Cir. 2003).

[21]   *See, e.g., Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble,* 429 U.S. 97, 106 (1976)); *see also* Fed. R. Civ. P. 8(a)(2) and (e).

[22]   *See Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

[23]   *See* Fed. R. Civ. P. 56(c).

[24]   *See* Fed. R. Civ. P. 56(e).

[25]   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

[26]   *See Masson v. New Yorker Magazine, Inc.*, 501 U.S. 496, 520 (1991).

[27]   *See Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 588 (1986).

reasonable jury might return a verdict in its favor based on that evidence."[28]  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[29]

### III.  ANALYSIS

#### A.  SUMMARY JUDGMENT IS NOT WARRANTED UNDER THE DOCTRINE OF UNCLEAN HANDS

Defendants argue that Brahmana's claims should be barred and summary judgment granted under the doctrine of "unclean hands" because: (1) Brahmana obtained his employment at CyberData through use of a purportedly fraudulent and misleading resume that failed to disclose Plaintiff's criminal record or prior incarceration; and (2) Brahmana's "real" target with his claims is Joe Henard ("Henard"), a Santa Cruz County District Attorney's Office Investigator who investigated Brahmana for fraud in the 1990s.  According to Defendants, Brahmana would not have sued CyberData or Lembo if CyberData had cooperated with Brahmana in "going after" Henard.[30]

Under the clean hands doctrine, those seeking equity must "have acted fairly and without fraud or deceit as to the controversy in issue."[31]

> "The maxim that he who comes into equity must come with clean hands is not applied by way of punishment for an unclean litigant but 'upon considerations that make for the advancement of right and justice.'  It is not a rigid formula which 'trammels the free and just exercise of discretion.'"[32]

As to Brahmana's resume, Defendants have not shown that Brahmana's purported omission of his criminal record or prior incarceration warrants application of the unclean hands doctrine in this case.  While the CyberData employee handbook notes that any material omissions in any part of

---

[28] *T.W. Elec. Service v. Pacific Elec. Contractors,* 809 F.2d 626, 630, 631 (9th Cir. 1987).

[29] *Anderson*, 477 U.S. at 248.

[30] *See Brahmana v. Henard,* Case No. CV 10-01790 HRL (N.D. Cal.).

[31] *See Ellenburg v. Brockway, Inc.*, 763 F.2d 1091, 1097 (9th Cir. 1985) (upholding district court's finding that employee's claims were not barred by doctrine of unclean hands where employer alleged employee had lied on his application and resume).

[32] *See Johnson v. Yellow Cab Transit Co.*, 321 U.S. 383, 387 (1944) (citations omitted).

any employment application may result in termination,[33] it is undisputed that CyberData did not ask Brahmana for information regarding any criminal record or prior incarceration when he applied for the job.[34] Moreover, after being put on notice that Brahmana was subject to a "victim's restitution" wage garnishment order, it is undisputed that CyberData neither inquired about the nature of Brahmana's criminal record or prior incarceration nor terminated his employment.[35]

As to Brahmana's request for Defendants' cooperation in suing Henard, Defendants cite no case in which a court has found claims barred by unclean hands simply because a plaintiff initially offered not to sue one tortfeasor if that tortfeasor provided evidence for use against a different tortfeasor. To the contrary, obtaining such cooperation has long been one of the benefits a plaintiff may seek by suing multiple tortfeasors and settling with less than all of them.[36] Under these circumstances, the court is not persuaded to exercise its discretion to bar Brahmana from pursuing any otherwise-valid employment-related claims he may have against Defendants.

**B.  SUMMARY JUDGMENT IS NOT WARRANTED UNDER THE DOCTRINE OF ADMINISTRATIVE EXHAUSTION**

Defendants argue that Brahmana's Title VII and FEHA claims should be denied because Brahmana failed to exhaust his administrative remedies before bringing this suit. Specifically, Defendants argue that Brahmana failed to submit the verified complaint necessary to initiate state administrative proceedings.

Under Title VII, before bringing a civil action alleging employment discrimination, an employee must first file a timely charge with the EEOC.[37] But as Judge Whyte has previously explained, in a state like California that has laws prohibiting unlawful employment discrimination

---

[33]  4/5/10 Declaration of Philip C. Lembo in Support of Defendants' Motion for Summary Judgment (Docket No. 195) Exh. C.

[34]  *See* 6/8/10 Declaration of Metteya Brahmana in Support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment (Docket No. 263) ("Brahmana Decl.") ¶ 3.

[35]  *See* Brahmana Decl. ¶ 4.

[36]  *See, e.g., American Motorcycle Assn. v. Superior Court,* 20 Cal.3d 578, 615 (1978) (Clark, J., dissenting) (noting that in settling with one of multiple defendants, a plaintiff "may secure the cooperation of the settling defendant for the later trial").

[37]  *See* 42 U.S.C. §2000e-5(f).

and authorizing a state authority to grant or seek relief from such discrimination, the employee cannot file a charge with the EEOC until after first initiating proceedings with the state.[38]

Pursuant to California's Worksharing Agreement, the California Department of Fair Employment and Housing ("DFEH") and the EEOC each designated the other as its agent for the purpose of receiving and drafting charges, including those that are not jurisdictional with the agency that initially receives the charge.[39] Filing a complaint with the EEOC is therefore essentially the same as filing it with the DFEH for purposes of exhausting administrative remedies. However, it is clear from the Worksharing Agreement itself that a charge received by the EEOC on behalf of the DFEH must nonetheless satisfy the requirements of the DFEH:

> "Each Agency will inform individuals of their rights to file charges with the other Agency and or assist any person alleging employment discrimination to draft a charge in a manner which will satisfy the requirements of both agencies to the extent of their common jurisdiction."[40]

In order to satisfy the requirements of the DFEH, a complaint must be "verified."[41]

In the present case, it is undisputed that Brahmana did not file any verified discrimination complaint with either the DFEH or the EEOC within the designated 300-day period for doing so. In fact, it was on this basis that Judge Whyte previously dismissed Brahmana's Title VII and FEHA claims. In the FAC, Brahmana now alleges that after submitting the initial EEOC questionnaire, he later sent the EEOC a letter verifying (1) the facts contained in the charge he had filed through an online questionnaire submitted on June 9, 2009; and (2) the facts in support of the Title VII claims in the 2nd, 3rd, and 4th amended complaints he had previously sent to the EEOC in response to questions they had sent him.[42]

Brahmana's letter, however, was submitted only after Brahmana proceeded to file this

---

[38] *See* 3/17/10 Order at 1-4.

[39] *See* Declaration of Michael P. Burns in Support of Defendants' Supplemental Brief Regarding Exhaustion of Administrative Remedies (Docket No. 292) ("Burns Decl.") Exh. B at ii.

[40] *See id.*

[41] *See* Cal. Gov. Code § 12960(b); *Cole v. Antelope Valley Union High School Dist.*, 47 Cal. App.4th 1505, 1511 (1996).

[42] *See* Supplemental Brahmana Decl. Exhs. A and B.

lawsuit. Such a post-suit amendment would appear to frustrate the "object of protecting employers from the disruption and expense of responding to a claim unless a complainant is serious enough and sure enough to support it by both subject to liability for perjury."[43] Nevertheless, the Ninth Circuit has provided exactly this direction, albeit in a decision marked "not appropriate for publication" or citation.[44] Furthermore, the Third Circuit has similarly held that a plaintiff's failure to verify his complaint before the EEOC pre-suit is subject to "equitable considerations" allowing the plaintiff's claim in federal court to proceed.[45] Finally, the court notes that the EEOC freely permits "technical" amendments such as Brahmana's under 29 C.F.R. §1601.12(b), without imposing any time limit whatsoever.

In light of these authorities and the Ninth Circuit's well-established principal that the "Equal Opportunity Act is a remedial statute to be liberally construed in favor of the victims of discrimination,"[46] the court concludes that Brahmana has exhausted his administrative remedies with regard his Title VII and FEHA claims based on the termination of his employment, and any other actions occurring within 300 days prior to June 9, 2009.

**C. SUMMARY JUDGMENT IS WARRANTED AS TO BRAHMANA'S CLAIMS OF DISCRIMINATORY DEMOTION (COUNTS 2 AND 5)**

In the FAC, Brahmana expressly bases Counts 2 and 5 on a demotion that occurred in July of 2006. As noted above, Brahmana exhausted his administrative remedies for actions occurring within 300 days before he submitted the intake questionnaire to the EEOC on June 9, 2009. The demotion, however, occurred *years* before he submitted the intake questionnaire, so that even if Brahmana's March 5, 2010 letter was sufficient to initiate proceedings with the DFEH retroactively, his demotion-based claims are nevertheless barred.

**D. SUMMARY JUDGMENT IS FURTHER WARRANTED AS TO BRAHMANA'S HOSTILE ENVIRONMENT CLAIMS (COUNTS 1 AND 4)**

---

[43] *Edelman v. Lynchburg Coll.,* 535 U.S. 105, 113 (2002).

[44] *See McWilliams v. Lathan Sanitation, Inc.,* 149 Fed. Appx. 588, 589 (9th Cir. 2005).

[45] *See Buck v. Hampton Township School Dist.,* 452 F.3d 250, 265 (3rd Cir. 2006). *But see Balasz v. Lieberthal,* 32 F.3d 151, 157 (4th Cir. 1994).

[46] *Casarantes v. Cal. State Univ. Sacramento,* 732 F.2d 1441, 1442 (9th Cir. 1984).

Summary judgment is warranted on Brahmana's hostile environment claims because Brahmana has failed to submit admissible evidence upon which a reasonable jury could find in his favor on those claims.

Brahmana bases these claims on his 2006 demotion, a November 2007 incident involving a religiously offensive cartoon, a June 28, 2008[47] email, and his need to remove himself from meetings anytime Defendant Conquest Technology Limited ("Conquest") business was discussed. The demotion, the cartoon and the email all occurred more than 300 days before Brahmana submitted the intake questionnaire to the EEOC[48], and thus any claim based solely on those events is time-barred.

The only "harassing" events that allegedly occurred within 300 days before Brahmana submitted the intake questionnaire to the EEOC were the CyberData data meetings at which Conquest was discussed. Brahmana alleges he had to remove himself from those meetings because he believed Defendant Lembo was using Conquest to steal the intellectual property of a cable connector company called FCI. According to Brahmana, such activity conflicted with his Buddhist values and he did not want to be personally liable for involvement in the purportedly illegal scheme. However, absent a showing of discriminatory intent directed at an individual, the mere fact that a company is involved in a business practice that an employee believes violates his religious values is insufficient to constitute religious harassment. To hold otherwise would essentially turn Title VII into a tool for imposing religious values on the speech of all employers in violation of the First Amendment.[49] Brahmana has not submitted any evidence that the CyberData meetings were conducted for the purpose of harassing him. Thus, the meetings are insufficient to constitute religious harassment.

Because the only even arguably harassing events occurred more than 300 days before

---

[47] The FAC states the email was sent on July 29, 2008. FAC ¶ 33. In his declaration, Brahmana attests the email was sent on June 28, 2008. *See* Brahmana Decl. ¶ 23.

[48] *See* Brahmana Decl. ¶¶ 8, 19 and 23.

[49] The rationale here is the same as in those cases that have found that the First Amendment protects offensive speech from claims of sexual or racial harassment where the speech is not directed at any specific individual. *See, e.g., Rodriguez v. Maricopa County Community College Dist.*, 605 F.3d 703, 710 (9th Cir. 2010) (holding that harassment law generally targets conduct, and it sweeps in speech as harassment only when consistent with the First Amendment").

Brahmana submitted the intake questionnaire to the EEOC, this claim is time-barred.

**E. SUMMARY JUDGMENT IS WARRANTED AS TO BRAHMANA'S DISCRIMINATORY DISCHARGE AND RETALIATION CLAIMS (COUNTS 3 AND 4)**

*1. Disparate Treatment*

In Title VII disparate treatment cases, courts consider a motion for summary judgment under the legal framework established in *McDonnell Douglas Corp. v. Green*.[50] Under *McDonnell Douglas*, a plaintiff alleging disparate treatment must first establish a *prima facie* case of discrimination.[51] Specifically, the plaintiff must show that (1) he belongs to a protected class; (2) he was qualified for the position; (3) he was subject to an adverse employment action; and (4) similarly situated individuals outside his protected class were treated more favorably.[52] The burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action.[53] If the employer does so, the plaintiff must show that the articulated reason is pretextual "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."[54] The *McDonnell Douglas* framework is also applicable to discrimination claims under California's Fair Employment and Housing Act.[55]

In his opposition brief to Defendants' motion for summary judgment, Brahmana cites *no* evidence that similarly situated individuals outside his protected class (i.e. a class comprising members of the Buddhist faith) were treated more favorably, as required to establish a *prima facie* case of discrimination. Summary judgment on this claim is warranted on that basis alone.[56]

---

[50] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[51] *Id.* at 802.

[52] *Id.*

[53] *Id.*

[54] *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981).

[55] *See Clark v. Claremont University Center*, 6 Cal.App.4th 639, 662 (1992).

[56] *See* Fed. R. Civ. Pro. 56(e)(2) (explaining that where party fails to support claim that fact is genuinely dispute with citations to evidentiary materials in the record, court may treat fact as undisputed); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029-31 (9th Cir.

### *2. Retaliation*

To establish a prima facie case, the plaintiff must show that he engaged in a protected activity, his employer subjected him to adverse employment action, and there is a causal link between the protected activity and the employer's action.[57]

In his opposition brief, Brahmana does not cite any evidence in support of his claim from which a reasonable jury could find that the *reason* for the termination of his employment was retaliation for protected activities.[58] As noted above, the failure to cite to any supporting evidence in the record is sufficient to warrant summary judgment.[59]

### F. SUMMARY JUDGMENT IS WARRANTED AS TO BRAHMANA'S WRONGFUL CONSTRUCTIVE DISCHARGE CLAIM (COUNT 6)

This claim is time-barred because the employment action at issue, CyberData's demotion of

---

2001) (holding that courts are not required to consider evidence that is technically part of record, but is not specifically referred to in a party's motion papers).

Even if the court considers the declarations Brahmana submitted with his opposition, Brahmana presents no admissible evidence from which a trier of fact could find in his favor on these claims. The statements in the Hessler Declaration regarding what was said to him by other CyberData employees (none of whom appear to be managers or otherwise authorized to speak on behalf of CyberData) are inadmissible hearsay. Hessler's statement regarding his "belief" regarding why Brahmana was terminated lacks foundation and is inadmissible opinion testimony. None of the remaining testimony in the Hessler Declaration is relevant to Brahmana's claims of disparate treatment discrimination.

In addition, nothing in Brahmana's own declaration shows that "similarly situated individuals outside his protected class were treated more favorably." While Brahmana states he reviewed the resumes of two other employees who were hired to do VoIP sales, Brahmana submits no evidence that those employees are outside his protected class (i.e., that they are not Buddhists).

[57] *See Wrighten v. Metropolitan Hospitals, Inc.* (9th Cir.1984) 726 F.2d 1346, 1354; *Fisher v. San Pedro Peninsula Hospital,* 214 Cal.App.3d at 614.

[58] While Brahmana attests that he objected to CyberData's allegedly unethical business practices based on his religion, *See* Brahmana Decl. ¶ 22, he submits no evidence showing that Defendants knew that his objection to such business practices was based on his religion. In his declaration Brahmana states that he communicated his objection to Lembo, but does not state that he communicated to Lembo the reason for his objection. In any event, Brahmana has submitted no evidence from which a reasonable jury could find that the 2006 objection was the reason for the 2008 termination of his employment.

[59] *See* Fed.R.Civ.Pro. 56(e)(2); *see also Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d at 1029-31. Even if the court were to find there was a genuine issue of fact regarding Plaintiff's retaliation claim as to CyberData, summary judgment would still be warranted as to the individual Defendants. The California Supreme Court has held that non-employer individuals are not personally liable for retaliation. *See Jones v. The Lodge at Torrey Pines Partnership,* 42 Cal.4th 1158, 1160, 72 Cal.Rptr.3d 624, 177 P.3d 232 (2008)

Brahmana, occurred in 2006. Although it is unclear whether Brahmana is asserting this action based on contract or tort, it is time-barred in either event. Under California law, the statute of limitations is the same–2 years–whether the claim is premised on an oral agreement[60] or instead is based in tort.[61] Because Brahmana did not file this action until January of 2009, more than 2 years after the 2006 demotion, this claim is time-barred and summary judgment is warranted on this claim.

### G. SUMMARY JUDGMENT IS NOT WARRANTED AS TO BRAHMANA'S WRONGFUL TERMINATION CLAIMS (COUNT 8)

The parties both submitted motions for summary judgment regarding Brahmana's claim that he was wrongfully terminated based on a report from Henard that Brahmana was under investigation for the crime of perjury.[62]

California Labor Code section 432.7(a) precludes an employer from using as a factor in terminating an employee's employment any record of arrest or detention which did not result in conviction . While no record of arrest or detention is at issue here, Brahmana argues that Section 432.7 indicates a broader public policy against allowing an employer to fire an employee based in whole or in part on the fact an employee has been suspected of a crime, absent a conviction for that crime. According to Brahmana, if Lembo's firing of Brahmana was based in part on Henard having told Lembo that Brahmana was being investigated for perjury, a reasonable jury could find that the termination violated the public policy reflected in Section 432.7.

Defendants argue that Section 432.7 is inapplicable where, as here, the plaintiff was never subject to any arrest or detention. This argument, however, would suggest that employers may consider a report from law enforcement of a criminal investigation – which requires nothing

---

[60] Brahmana has submitted no evidence that would be sufficient to support a jury finding that there was a written employment agreement. While Brahmana claims there was one, he has submitted no evidence regarding the terms of any such *written* employment contract. Thus, the two year statute of limitations for oral contracts applies to any contract-based claims Brahmana may have.

[61] *See* Cal. Code of Civ. P. §§ 335.1 and 339.

[62] While the FAC cites other public policies as bases for Brahmana's claim, including Labor Code Sections 96(k), 1101, 1102 and 1102.5c, Judge Whyte dismissed each of these claims except 1102.5c with prejudice. With respect to 1102.5c, which proscribes retaliation for engaging in protected reporting to government officials, Brahmana fails to address this section anywhere in his opposition to Defendants' summary judgment motion. Upon its own review of the record, the court finds no evidence that Brahmana made any such report. *Cf. Patten v. Grant Joint Union High School,* 134 Cal. App. 4th 1370, 1385 (2005).

approaching probable cause – but may not consider a report of an arrest, which requires at least probable cause. Defendants cite to no cases suggesting such an incongruity.[63]

Defendants next argue that the record does not contain sufficient evidence for a reasonable jury to accept Brahmana's claim. As his only evidence that Lembo based his decision at least in part on his suspicion that Brahmana committed perjury, Brahmana quotes from the video tape of the Lembo deposition, but provides the court with no transcript or transcript excerpts, certified or otherwise. The 1993 Advisory Notes to Fed. R. Civ. P. 30(b) explicitly state that "[a] party choosing to record a deposition only by videotape or audiotape should understand that a transcript will be required by Rule 26(a)(3)(B) and Rule 32(c) if the deposition is later to be offered as evidence at trial or on a dispositive motion under Rule 56." While Rule 32(c) indicates that a court may permit testimony in non-deposition transcript form as well, Brahmana secured no such order, nor ever requested such an order, even after Defendants repeatedly objected. This imposes an undue burden on the court that ordinarily will not be tolerated.

Nevertheless, in light of the Ninth Circuit's instruction regarding deference to *pro se* parties like Brahmana,[64] the court has reviewed the official copy of the Lembo video deposition filed by Defendants in its entirety. While Lembo declares at one point that the investigation report "biased his decision," the entirety of Lembo's testimony is mixed on the issue at hand. In light of this testimony, a reasonable jury could rule in either party's favor on Brahmana's wrongful termination claim.

Under these circumstances, summary judgment in favor of either of Defendants or Brahmana is not warranted.

---

[63] In support of their argument, Defendants point to *Pittman v. City of Oakland,* 197 Cal. App. 3d 1037, 1044 (1988) and *Cranston v. City of Richmond,* 40 Cal.3d 755 (1985). But in each of those cases, the employer at issue conducted in its own investigation into the alleged crime. Under those circumstances, it is entirely logical that the employer could take action on the results of its investigation even if no arrest or detention ever occurred. Here, the undisputed record indicates the only information Lembo had regarding Brahmana's alleged perjury came from a report by law enforcement that requires even less indicia of reliability than a record of arrest or detention.

[64] *See Bretz v. Kelman,* 773 F.2d 1026, 1027, n.1 (9th Cir. 1985).

**H.   SUMMARY JUDGMENT IS NOT WARRANTED AS TO BRAHMANA'S FALSE LIGHT CLAIM (COUNT 9)**

To succeed on his claim for false light, Brahmana must prove he was placed in a false light that would be "highly offensive to a reasonable person."[65] In addition, Brahmana must prove facts showing that Barfield acted negligently in failing to learn whether the publicized fact placed Brahmana in a false light.[66]

Brahmana grounds his false light claim in the following statements[67] in an email Barfield sent to CyberData employees:

> Checking Monterey County Superior Court records yields a family court case involving Matt and Yanina Shevchenko. Sounds like a Ukranian name, and I'm pretty sure Matt's wife is Ukranian. My best guess is that this was a restraining order. Filing date was 08 February 2008. [followed by URL] ...
>
> Metta Motors' web site claims Matt has an MBA from Babson College, which I have not been able to confirm. It also claims a Bachelor's in Environmental Economics and Policy, which I have not been able to confirm.

Defendants argue that no reasonable jury could find that Barfield acted negligently in failing to learn whether these statements placed Brahmana in a false light. Defendants point out that Barfield submitted a declaration in which he attests that:

> "8.   I also commented about Plaintiff's publicly-available Monterey County Superior Court records. I made it clear, however, that 'my best guess' was that the case somehow involved a restraining order. I did not state against whom a restraining order may have been issued (i.e. against Plaintiff or against his wife.)
>
> "9.   My comments about Plaintiff's educational degrees made clear that I had not yet been able to *confirm* that Plaintiff had earned a Bachelor's Degree from

---

[65]   *See Fellows v. National Enquirer, Inc*., 42 Cal.3d 234, 238 (1986).

[66]   *See id*. at 248 (holding that the restrictions on liability for defamation apply equally to false light claims); *Khawar v. Globe Internet*, 19 Cal.4th 254, 274 (1998) ("In California, this court has adopted a negligence standard for private figure plaintiffs seeking compensatory damages in defamation actions."). Contrary to Defendants' argument, no showing of malice is required for a claim for false light invasion of privacy brought by a private individual. Defendants reliance on *Johnson v. Harcourt, Brace, Jovanovich, Inc.*, 43 Cal.App.3d 880 (1974) is misplaced. In that case the court noted it was "dealing with a person who injected himself into the vortex of publicity." Thus the standards applicable to a public figure applied in that case. Here, it has not been shown that Brahmana should be treated as a public figure.

[67]   Brahmana also based his claim on a statement in the email that "If you're curious, Metteyya is the name of the fifth (upcoming) Buddha. Brahmanas are ancient Hindu texts describing how to perform certain rituals." However, Judge Whyte previously dismissed his claim with regard to this statement with prejudice. *See* 3/17/10 Order at 6:14-16.

ORDER, *page 15*

the University of California, Berkeley or a Masters in Business Administration from Babson College. I did not state, nor did I imply, that Plaintiff had not actually earned these degrees."[68]

Nowhere in Barfield's declaration, however, does he state what, if any, attempts he made to ascertain the nature of the Monterey County family court case or to confirm whether Brahmana had the two educational degrees. Indeed, a reasonable jury could conclude from Barfield's statement that he undertook no actions at all and that this was itself negligent. Furthermore, while Defendants try to characterize Barfield's statements as mere "opinion," whether Brahmana was party to a family court case involving a restraining order is a matter of fact, not opinion. As to the ambiguity regarding which spouse sought a restraining order, a reasonable jury could find that the false inference of a restraining order would be highly offensive regardless of whether the restraining order was purportedly sought against, or sought by, Brahmana. Similarly, whether or not Brahmana had the referenced education degrees were matters of fact, not opinion.

Based on the evidence before the court, and under the current state of California false light law, a reasonable jury could find that: (1) Barfield placed Brahmana in a false light that would be highly offensive to a reasonable person by implying Brahmana's wife had sought a restraining order and/or that Brahmana had claimed educational degrees he did not actually have; and (2) that Barfield was negligent in failing to learn that his comments put Brahmana in a false light (e.g., failing to adequately attempt to learn the nature of the family law case and/or failing to adequately attempt to determine whether Plaintiff had the educational degrees). Thus, summary judgment on this claim is not warranted.

**I.    SUMMARY JUDGMENT IS WARRANTED AS TO BRAHMANA'S PRIVACY CLAIMS (COUNTS 10-12)**

In opposing Defendants' motion for summary judgment as to these privacy claims, Brahmana did not submit any argument or evidence in response with regard to these claims. Summary judgment is thus warranted as to these claims because Brahmana bears the burden of proof

---

[68]    *See* Declaration of Cameron Barfield in Support of Defendants' Motion for Summary Judgment (Docket No. 196) ¶¶ 8 and 9.

on these claims, yet has failed to submit evidence from which a jury could find in his favor.[69]

## IV. CONCLUSION

As previously scheduled, the parties shall appear at a final pre-trial conference on May 10, 2011 at 2PM.  Trial on Brahmana's remaining claim (Count 9) shall commence on May 26, 2011 at 9AM.

**IT IS SO ORDERED**.

Dated:   May 4, 2011

PAUL S. GREWAL
United States Magistrate Judge

---

[69] *See Celotex*, 477 U.S. at 323 (moving party need not negate elements of the non-moving party's case on which the non-moving party bears the burden of proof) .

ORDER, *page 17*