UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| METTEYYA BRAHMANA,<br><br>                Plaintiff,<br>     v.<br><br>PHILLIP CHARLES LEMBO; CYBERDATA CORPORATION; NUMONIX, INC.; and CONQUEST TECHNOLOGY LIMITED,<br><br>                Defendants. | Case No.: C 09-00106 PSG<br><br>**ORDER FOLLOWING FINAL PRETRIAL CONFERENCE**<br><br>**(Re: Docket Nos. 332, 339, 337, 342)** |

On January 10, 2012, Plaintiff Metteyya Brahmana ("Plaintiff") and Defendants Phillip Charles Lembo, Cyperdata Corp., Numonix, Inc., and Conquest Technology Ltd. ("Defendants") appeared for pretrial conference. Having considered the briefing and argument of both parties regarding their motions *in limine* and other pretrial matters, the court rules as follows.

**A.    MOTIONS *IN LIMINE***

Plaintiff's Motion *in Limine* No. 1: Plaintiff moves to exclude evidence of Plaintiff's prior convictions in 1986 (fraud relating to loan student loan application), 1998 (securities fraud), and 1999 (attempted pandering) as more prejudicial than probative, as well as unduly-time consuming and potentially confusing to a jury.[1] Plaintiff contends that CyberData did not ask for information

---

[1] *See* Fed. R. Evid. 403 ("Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury.").

1

Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

regarding criminal record or prior incarceration before hiring Plaintiff, and furthermore that Defendant Lembo had learned of Plaintiff's conviction well before terminating Plaintiff and took no action at that time. Plaintiff also specifically seeks to exclude evidence of the prior convictions pursuant to Fed. R. Evid. 609 on the following grounds: (1) his significant, demonstrated rehabilitation since that period of his life; (2) the fact that more than 10 years have passed since the 1986 conviction, which moreover was reduced to a misdemeanor after Plaintiff made restitution; and (3) that the 1999 conviction for attempted pandering is not a crime involving a dishonest act or false statement and does not go to Plaintiff's credibility.

Defendants oppose the motion, arguing that the evidence is relevant to the basis for Plaintiff's termination, because Plaintiff did not disclose his criminal history and imprisonment misrepresented this in Plaintiff's employment application. Defendants also argue that Plaintiff's argument pursuant to Rule 609 is a "red herring" because Defendants do not seek to use the evidence of prior convictions for impeachment purposes, but rather as direct evidence in this case.[2]

Plaintiff's imprisonment within the past 10 years for the 1998 felony conviction is clearly relevant to Defendants' defense to plaintiff's wrongful termination claim. In order to limit the risk of unfair prejudice to Plaintiff, however, the court will exclude evidence of the specifics of the 1998 conviction (e.g., the fact that the conviction was for securities fraud). To this same end, the court will exclude evidence of the 1986 conviction pursuant to Rules 403 and 609(b), and will exclude evidence of the 1999 attempted pandering conviction pursuant to Rule 403 and 609(a)(2) because it did not involve a dishonest act or false statement.[3] The court will entertain a stipulation by the parties for a joint jury instruction relating to the evidence of past criminal conviction.

---

[2] During oral argument, however, defense counsel stated that Plaintiff's credibility is at issue, suggesting that evidence of Plaintiff's conviction and prison sentence may be used by the Defendants for impeachment purposes. *See* FTR 2:41:17-2:42:15 (Jan. 10, 2012).

[3] *Cf. United States v. Colbert*, 116 F.3d 395, 396 (9th Cir. 1997) (finding that a conviction for lewd conduct, like that for prostitution, does not involve dishonesty or false statement and is not admissible under Fed. R. Evid. 609(a) for impeachment purposes) (citing *United States v. Walker*, 613 F.2d 1349, 1354 (5th Cir. 1980), *United States v. Wright*, 564 F.2d 785 (8th Cir. 1977)).

2

Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Plaintiff's Motion *in Limine* No. 2: Plaintiff moves to exclude any references to Plaintiff's name change from Matthew Bowin to Metteyya Brahmana as not relevant to the claims at issue and potentially prejudicial because it might induce the jury to look up information online pertaining to Plaintiff's former name. Defendants argue that Plaintiff's name change(s) prevented Barfield from verifying Plaintiff's educational background and are probative of Barfield having taken reasonable steps to verify the truth of the information in his email, which are directly relevant to the false light claim.

The court finds the fact of Plaintiff's name change(s) to be relevant to Defendants' defense to the false light cause of action, and more probative than prejudicial. It is not necessary, however, to reveal Plaintiff's actual former name(s) in order to minimize any risk of juror curiosity relating to the former name(s). Defendants may introduce evidence of Plaintiff's name change(s), excluding any mention or indication of Plaintiff's actual former name(s).

Plaintiff's Motion *in Limine* No. 3: Plaintiff moves to exclude evidence regarding the alleged presence of pornographic images on Plaintiff's work computer as not relevant and substantially more prejudicial than probative. Defendants object and argue that the probative value outweighs the prejudice to Plaintiff, because Plaintiff's internet use during work hours is relevant to Defendants' motive for termination.

Defendants may introduce evidence limited to establishing that Plaintiff was engaged in surfing the internet or using his work computer for non-business related purposes. Defendants shall not specify the presence of pornographic material discovered on the computer.

Plaintiff's Motion *in Limine* No. 4: Plaintiff moves to exclude evidence regarding Plaintiff's unemployment benefits since his termination. Defendants have not opposed this motion. The motion is granted.

Plaintiff's Motion *in Limine* No. 5: Plaintiff moves to exclude evidence regarding the reasons for or circumstances of Plaintiff's divorce from his ex-wife, Yanina Scevchenko. Defendants have not opposed this motion. The motion is granted.

3

Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Plaintiff's Motion *in Limine* No. 6: Plaintiff moves to exclude evidence regarding Plaintiff's unemployment benefits since his termination. Defendants have not opposed this motion. The motion is granted.

Defendants' Motion *in Limine* No. 1: Defendants move to exclude any evidence of damages claimed by Plaintiff. Defendants contend that Plaintiff failed to make appropriate disclosures pursuant to Fed. R. Civ. P. 26(a)(1)(c)[4] or even to respond to Defendants' multiple written discovery requests asking Plaintiff to identify the basis of his calculation of damages. According to Defendants, Plaintiff refused and simply continued to refer to his Fourth Amended Complaint. Defendants contend that such failure to disclose was not harmless because the complaint does not make clear the type or types of damages or the basis for any damage calculations. Defendants argue that the appropriate sanction for Plaintiff's failure is preclusion from offering the evidence at trial.[5]

Plaintiff opposes the motion and argues that Defendants' motion is mooted as to the computation of damages for lost wages because Plaintiff supplemented his responses to Defendants' discovery requests on December 23, 2011, in accordance with Fed. R. Civ. P. 26.[6] According to Plaintiff, the majority of documents produced to Defendants were already in Defendants' possession. Furthermore, Plaintiff points out that his Fifth Amended Complaint (filed March 27, 2010) provided a computation of damages for emotional distress and punitive damages with respect to both the wrongful termination and false light claims.

---

[4] *See* Fed. R. Civ. P. 26(a)(1) (requiring amongst the required, initial disclosures "a computation of each category of damages claimed by the disclosing party – who must also make available for inspection and copying as under Rule 34 the documents or other evidentiary material ... including materials bearing on the nature and extent of injuries suffered").

[5] *See Yeti by Molly v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001) ("Rule 37(c)(1) gives teeth to [the disclosure requirements] by forbidding the use at trial of any information required to be disclosed by Rule 26(a) that is not properly disclosed.") (citations omitted).

[6] *See* Docket No. 354 (Seibert Decl.) (explaining production of documents and electronic records to Defendants' counsel to supplement Plaintiff's earlier discovery responses, including "documents supporting Plaintiff's claims for lost wages that Plaintiff seeks to admit at trial").

4
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Particularly in light of the concession of defense counsel at oral argument that Defendants did not meet their burden under Fed. R. Civ. P. 37(c)(1),[7] the motion is denied.

Defendants' Motion *in Limine* No. 2: Defendants move to exclude Plaintiff's videotaped depositions and transcripts because the materials were not developed or shared in accordance with the federal rules. Because Plaintiff recorded the deposition testimony using his personal recording device and "acting as his own attorney," Defendants argue that the recordings must be excluded. Defendants also argue that exclusion is warranted by Fed. R. Evid. 804(b), which exempts from hearsay only "lawful deposition" testimony, and Fed. R. Civ. P. 32(a)(4) which allows the use of a deposition "for any purpose" witness only if that witness is unavailable at trial. With respect to the deposition transcripts, Defendants also note that the court reporter that ultimately transcribed the depositions more than two years after the fact was neither present nor had a person acting at his direction present at the time the testimony was given.

Plaintiff opposes the motion on the ground it would unfairly punish Plaintiff for his limited financial resources while proceeding *pro se*. In addition, Plaintiff clarifies the process that he used, including hiring a videographer from a court reporting firm and a certified court reporter to swear in the deposition witnesses, and later hiring a different court reporting firm to provide certified transcripts of the recordings provided by the first firm.[8] Plaintiff argues that the certified transcripts may be admitted into evidence under the "business records exception" to the hearsay rule.[9] Plaintiff requests leave of the court to amend his exhibit and witness list so that he may present the evidence necessary to lay the foundation for a business records exception.

The motion is denied. The deposition transcripts may be used for the purposes set forth in Fed. R. Evid. 801(d) and Fed. R. Civ. P. 32(a). The transcripts may also be used as set forth in Fed. R. Evid. 804(b) and Fed. R. Civ. P. 32(a)(4), but Plaintiff must establish the witnesses' unavailability as required by these rules.

---

[7] *See* FTR 2:50:10-2:50:25 (Jan. 10, 2012).

[8] *See* Docket No. 354 ¶¶ 3, 4, 8.

[9] *See* Fed. R. Evid. 803(6).

5
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Defendants' Motion *in Limine* No. 3: Defendants move to exclude evidence related to those causes of action that have been dismissed. Plaintiff objects only to the extent that some of the evidence specified by Defendants overlaps with evidence that supports Plaintiff's active claims. Insofar as Plaintiff does not object to the exclusion of evidence identified as relating to nos. 1, 2, 3, and 4 in Defendants' motion,[10] the motion is granted as to those items.

With respect to no. 5 (evidence related to Plaintiff's alleged demotion in 2006), Plaintiff argues that the evidence underlies his theory for Defendants' actual motivation for terminating Plaintiff in 2008. Because the court agrees that evidence supporting Plaintiff's position that his termination was the result of a refusal to participate in illegal activities is relevant and admissible, the motion is denied as to topic no. 5. Similarly, the court finds that no. 6 (evidence related to alleged acts of third party discrimination or harassment against Plaintiff) is relevant for the limited purpose of Plaintiff proving his damages. Plaintiff may therefore introduce evidence of discrimination and harassment solely for the limited purpose of establishing damages.

Defendants' Motion *in Limine* No. 4: Defendants move to exclude evidence that would attempt to establish individual liability for Plaintiff's wrongful termination claim, as well as that would attempt to establish Defendant Lembo's liability for Plaintiff's false light claim. Plaintiff concedes that only CyberData can be held liable for wrongful termination, and on that basis the court will exclude any evidence of Defendant Lembo's liability for wrongful termination. But Plaintiff disputes that Lembo cannot be held liable for his alleged republication of the allegedly false material. Plaintiff relies on a line of defamation cases in which courts have upheld liability for individuals who allowed false or misleading material to remain in the public sphere after being notified of it, even though not responsible for its initial publication.[11] "Defamation law sometimes

---

[10] *See* Docket No. 332 at 7 (Defs.' Mot. In Limine).

[11] *See, e.g.*, *Hellar v. Bianco*, 111 Cal. App. 2d 424, 427 (Cal. App. 1952). The Ninth Circuit recently cited *Hellar* with approval, noting that *"Hellar* is not an anomaly, but of a piece with a longstanding theory of defamation liability." *See Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1103 n.10 (9th Cir. 2009) (citations omitted). *See also Flowers v. Carville*, 310 F.3d 1118, 1128 (9thCir. 2002) ("noting the "venerable principle that a person who repeats a defamatory statement is generally as liable as the one who first utters it").

6
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

imposes 'an affirmative duty to remove a publication made by another.'"[12] Plaintiff argues that the same reasoning applies with equal force to republication of false or misleading material that places an individual in a false light.[13]

The court notes that the holding in *Barnes v. Yahoo!, Inc.* is premised on a finding that the potentially liable party is found to be the publisher or speaker of the false or misleading content.[14] The publication element of a false light cause of action requires only that the "defendant publicized information or material that showed plaintiff in a false light."[15] This general definition of publication does not on its face exclude republication. Furthermore, the court agrees that the rationale for holding an individual liable for republication of libelous statements applies equally to statements giving rise to a claim of false light.[16] The court therefore finds that Lembo may be subject to liability under Plaintiff's false light claim and that otherwise admissible evidence of such may be introduced.

Defendants' Motion *in Limine* Nos. 5 and 6: Defendants move to exclude evidence relating to Plaintiff's damages claims. First, Defendant seeks to exclude evidence regarding CyberData's net worth, including size, market share, and financial condition. Plaintiff argues that he must be allowed to submit evidence of the company's financial condition and Plaintiff's sales performance to the extent that Defendants argue that the termination decision was based in part on the economic situation and CyberData's finances at the time. Defendants also seek to exclude evidence of Lembo's personal net worth, which Plaintiff concedes is not relevant, except as to his claim for punitive damages.

---

[12] *Barnes*, 570 F.3d at 1103 (citing Prosser and Keaton on Torts § 113, at 803).

[13] *See* Docket No. 357 at 2 (Pl.'s Supp. Briefing in Opp'n to Defs.' Mot. In Limine No. 4) (citing *Johnson v. Harcourt, Brace, Jovanovich, Inc.* 43 Cal. App. 3d 880, 893 (1974).

[14] *See Barnes*, 570 F.3d at 1101-02.

[15] *See*, *e.g.*, Judicial Council of California Civil Jury Instructions (CACI) No. 1802 (2012).

[16] *See Flowers*, 310 F.3d at 1132 (noting the parallels between defamation and false light claims and how in California, "an action for invasion of privacy by placing the plaintiff in a false light in the public eye is in substance equivalent to a libel claim") (quoting *Selleck v. Globe Int'l Inc.*, 166 Cal. App. 3d 1123, 1133 (1985)).

7
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Second, Defendants move to limit Plaintiff's calculation of damages for the wrongful termination claim to Plaintiff's salary during the period of service, less the amount which Plaintiff earned or might have earned from other employment.[17] Plaintiff argues that he may seek compensation for actual losses, including lost wages, salary, commission and benefits, as well as for emotional harm,[18] and that the court may not limit Defendants' liability based on evidence of payments to Plaintiff from sources collateral to Defendants.[19]

Third, Defendants move to limit recovery under Plaintiff's false light claim to a demonstration by a preponderance of the evidence that he has suffered "serious mental harm or special damages."[20] To the extent that punitive damages are available for Plaintiff's false light claim, Defendants argue that Plaintiff must demonstrate oppression, fraud, or malice with clear and convincing evidence.[21] Plaintiff agrees that a showing of oppression, fraud or malice is required for an award of punitive damages for wrongful termination, but argues that such a showing is not required for punitive damages on his false light claim.[22]

Having considered the parties' arguments and the applicable law, the court finds as follows. Evidence of CyberData's general financial condition during the time frame between Plaintiff's hire and termination is relevant for the limited purpose of establishing whether the termination may

---

[17] *See* Docket No. 332 at 9 (citing *Parker v. Twentieth Century Fox Film Corp.*, 3 Cal. 3d 176, 181-82 (1970)).

[18] *See* Docket No. 353 at 6 (Pl.'s Opp'n to Def.'s Mot. In Limine) (citing *Freund v. Nycomed Amersham*, 347 F.3d 752, 760 (9th Cir. 2003)). Defendants initially also sought to limit damages and to preclude punitive damages resulting from a theory based on breach of contract. At the hearing, defense counsel conceded that Defendants' arguments relating to a breach of contract theory are moot in light of representations made by Plaintiff's counsel and thereby withdrawn. *See* FTR 2:59:53 - 3:00:10.

[19] *See id.* (citing *McLean v. Runyon*, 222 F.3d 1150, 1155-56 (9th Cir. 2000)).

[20] *See* Docket No. 332 at 9 (citing *Diaz v. Oakland Tribune, Inc.*, 139 Cal. App. 3d 118, 188 (1983)).

[21] *See id.* (citing Cal. Civ. Code Section 3294(a)).

[22] *See* Docket No. 353 at 6 (citing *Fellows v. Nat'l Enquirer*, 42 Cal. 3d 234 (1986)).

8
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

have been economically motivated. The parties therefore will be allowed to offer such evidence in support of their arguments related to the wrongful termination claim.

With respect to introducing more detailed financial information relating to CyberData's or Lembo's net worth, Plaintiff at this time has not met his burden of demonstrating there is sufficient evidence to maintain a prima facie case for punitive damages. Although California law recognizes that punitive damages may be available in a case for wrongful termination in violation of public policy,[23] the plaintiff first must establish a prima facie case of oppression, fraud or malice.[24] The same is true for rewarding punitive damages under the tort of false light.[25] Where a prima facie case has not been established, evidence of net worth is inadmissible because it may be distracting to the jury and prejudicial to the jury's compensatory damages determination.[26] Accordingly, the court grants Defendants' motion to exclude evidence of CyberData and Lembo's net worth without prejudice to Plaintiff establishing at trial a prima facie case for punitive damages, at which point Plaintiff may seek permission to introduce evidence of net worth, market share, and other detailed financial data.

Finally, in California, "damages for wrongful discharge in violation of public policy are not limited to those specified in the underlying statute that was violated" and may extend to

---

[23] *See Freund*, 347 F.3d at 760 (affirming availability of damages, including punitive, beyond those proscribed by the statute underlying a claim of wrongful discharge in violation of public policy).

[24] *See* Cal. Civ. Code Section 3294(a) ("In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.")

[25] *See id.* Plaintiff cites *Fellows v. Nat'l Enquirer* in support of his argument that a showing of oppression, fraud or malice is not necessary for punitive damages for his false light claim. But Plaintiff conflates special damages with the requirements for punitive damages. In *Fellows*, the court addresses proof of special damages under Cal. Civ. Code Sec. 45a in the context of a false light invasion of privacy claim based on a defamatory publication, not the required showing for punitive damages in the same context. *See Fellows*, 42 Cal. 3d at 251-52.

[26] *See Geddes v. United Financial Group*, 559 F.2d 557, 560 (9th Cir. 1977) (finding that defendant's financial standing is inadmissible as evidence in determining compensatory damages because the purpose of compensatory damages is to make plaintiff whole) (citations omitted); *999 v. C.I.T. Corp.*, 776 F.2d 866, 872-73 (9th Cir. 1985) (holding that the district court did not err in allowing evidence of defendant's net worth because there was sufficient evidence for the jury to find oppression or fraud as a basis for punitive damages).

9
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

**United States District Court**
For the Northern District of California

punitive damages or other remedies.[27] Evidence relevant to establishing those damages is therefore admissible. While Defendants may seek to prove that compensatory damages should be mitigated or limited based on factors such as Plaintiff's failure to seek out comparable work, Plaintiff will not be precluded from offering evidence going to emotional harm, or to punitive damages under the circumstances explained above.

Defendants' Motion *in Limine* No. 7: Defendants move to exclude any evidence of CyberData's corporate airplane as not relevant and prejudicial. Plaintiff opposes the motion on the ground that the airplane is relevant to Plaintiff's discovery of CyberData's partner company, Conquest, which triggered Plaintiff's refusal to participate in the allegedly illegal activity. Plaintiff further argues that Defendants have not established what prejudice, if any, would stem from introduction of the necessary evidence regarding the airplane.

The motion is granted but only in part. Plaintiff may introduce evidence of CyberData's airplane limited to the name and existence of the airplane, for the limited purpose of establishing how Plaintiff discovered the allegedly illegal activity that he then refused to participate in.

Defendants' Motion *in Limine* No. 8: Defendants move to exclude all evidence regarding Conquest Technology Limited as not relevant to the claims at issue and potentially prejudicial. Plaintiff responds once again that evidence relating to Conquest is central to Plaintiff's wrongful termination claim and theory that he was terminated because of his refusal to be party to illegal activities with respect to Conquest.

The motion is denied. Plaintiff will be allowed to offer evidence about Conquest for the limited purpose of establishing the basis for his belief that Defendants were engaged in illegal activities and directed him to participate.

**B.   VOIR DIRE**

As explained at the hearing, the court will conduct the majority of the voir dire, but will permit limited questions by counsel. Both parties have submitted proposed voir dire questions.[28]

---

[27] *See Freund*, 347 F.3d at 759-60.

[28] *See* Docket No. 342 (Defs.' Proposed Juror Questionnaire); Docket No. 337 (Pl.'s Proposed Voir Dire).

10
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Plaintiff does not object to Defendants' proposed questions.[29] Defendants object to several of Plaintiff's proposed voir dire questions on the grounds that they 1) invade the personal privacy right of jurors, 2) have a predominant purpose of preconditioning the juror to a particular result, and 3) necessitate undue consumption of time, create risk of undue prejudice, confuse the issues or mislead the juror, and are not relevant to the litigation. Specifically Defendants object to Plaintiff's Question Nos. 35, 46, 47, 48, 49, 50, 51, 52, 53, 54, 60, and 61.[30]

Counsel for each side will be allowed 30 minutes, following the close of the court's voir dire, to ask either follow-up questions in reference to particular responses to the court's questions or to use the proposed voir dire already filed with the court. However, the following questions on file with the court will not be permitted: Plaintiff's Proposed Voir Dire Question Nos. 46, 47, 48, 49, 52, 53, 60, and 61.

## C.     EVIDENTIARY OBJECTIONS

Plaintiff's Objections: Plaintiff objects to various sections of Defendants' submitted deposition transcripts on the same grounds as expressed in Plaintiff's motions *in limine*. Plaintiff specifically objects to the following excerpts as revealing information relating to Plaintiff's past convictions and to Plaintiff's name change: 23:2-25, 36:4-13, 41:10-23, and 115:18-116:3. Defendants may use only those sections of these deposition excerpts that comply with the court's rulings on Plaintiff's motions *in limine* nos. 1 and 2.

Plaintiff additionally objects to Deposition Excerpt 61:13-15 as incomplete,[31] Excerpt 82:23-83:11 as calling for speculation and incomplete, and Excerpt 78:16-24 as not relevant and more prejudicial than probative.[32] Defendants may offer the excerpt 82:23-83:11 relating to Metta

---

[29] *See* Docket No. 350 (Pl.'s Objections to Defs.' Proposed Form of Verdict and Juror Questionnaire).

[30] *See* Docket No. 346 (Defs.' Objections to Voir Dire)

[31] Defense counsel has corrected this submission to be Deposition Excerpt 64:13-15. Because this excerpt relates to Plaintiff's parole, it is subject to the same limitations as those sections relating to Plaintiff's conviction and imprisonment.

[32] *See* Docket No. 351 (Pl.'s Objections to Defs.' Depo. Designations).

11
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

Motors; Plaintiff may seek to introduce the remainder of the excerpt pursuant to Fed. R. Evid. 106. Defendants may not offer excerpt 78:16-24 relating to Plaintiff's allegedly viewing pornography while at work.

Plaintiff also objects to the following proposed exhibits: Defendants' D-34, D-35, D-36, D-37, D-47-48,[33] D-49, D-56-60, D-61, D-64-66, D-67-71, D-72-76, D-77-82, D-83-88, D-91-100, D-101-102, as well as the Metta Motors Website and Plaintiff's MySpace Page.[34] Having reviewed Plaintiff's objections to the proposed exhibits, D-34, D-35, D-36, D-37, D-64-66, D 96-100, and Plaintiff's MySpace Page shall be excluded. D-49, D-56-60, D-61, D-68-71, D-72-76, D-77-82, D-101-102, and the Metta Motors Website page may be offered into evidence, provided the appropriate foundation is laid.

Defendants' Objections: For the same reasons expressed in Defendants' motion *in limine* no. 2, Defendants object to Plaintiff's use of deposition transcripts. Defendants also object to Plaintiff's Exhibit Nos. P-5, P-6, P-8, P-9, P-10, P-11, and P-20.[35] P-5, P-6, P-9, P-10, P-11, and P-20 shall be excluded. P-8 may be offered into evidence, provided the proper foundation is laid.

**D.   JURY INSTRUCTIONS AND FORM OF VERDICT**

IT IS FURTHER ORDERED that the court will issue the appropriate jury instructions and jury verdict form at trial.

**E.   SCHEDULE**

IT IS FURTHER ORDERED that the schedule for trial is as follows:

1.   Jury selection shall commence on January 23, 2012;

2.   Opening statements will immediately follow jury selection;

3.   Opening statements and closing arguments are each limited to 30 minutes per party;

---

[33] Plaintiff's objection has been withdrawn based on defense counsel's representation that he will remove the incorrect resume from D-47-48 and exchange for the appropriate exhibit.

[34] *See* Docket No. 352 (Pl.'s Objections to Defs.' Proposed Exhibits).

[35] *See* Docket No. 348 (Defs.' Objections to Pl.'s Proposed Exhibits).

12
Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE

    4.    20 hours of total trial time is allotted, with each party having 10 hours of trial time (exclusive of any time allotted for jury selection, and opening statements and closing arguments);

    5.    Trial will commence each morning at 9:30AM and conclude at 4:30PM. There will be two 15-minute breaks (at approximately 11:00AM and 3:00PM) and a one-hour lunch break from 12:30PM-1:00PM.

    6.    No trial will be held on Tuesday, January 24, 2011.

**F.    SETTLEMENT**

The parties are encouraged to continue settlement discussions and to contact the court should both sides determine that a further, court-sponsored settlement discussion has a substantial likelihood of success.

**IT IS SO ORDERED.**

Dated: 1/19/2012

                                                    PAUL S. GREWAL
                                                    United States Magistrate Judge

13

Case No.: C 09-00106 PSG
ORDER FOLLOWING FINAL PRETRIAL CONFERENCE